[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Roy C. Franco, age 41 and the defendant, Deborah Phelps-Franco, age 40, whose maiden name was Deborah Phelps, were married on December 17, 1976 in Fairfield, Connecticut. There are three minor children issue of the marriage, Gregory Phelps-Franco, born March 13, 1980, Ryan Phelps-Franco, born July 15, 1981 and Keegan Phelps-Franco born October 7, 1982. Both parties agree that the marriage has broken down irretrievably.
The plaintiff has a BS degree in mechanical engineering as well as some post graduate credits. He is employed as a corporate safety manager at the Torrington Company now earning $62,800.00 per year. The defendant has a BS degree in education and is employed in the Torrington school system as an art teacher earning approximately $39,000.00 per year. The plaintiff claims to have a weekly CT Page 1710 net income of approximately $750.00 and the defendant a weekly net of approximately $490.00.
In spite of personality differences, it would appear from the evidence that the marriage was fairly stable until six or seven years ago. The plaintiff claims that his wife is outgoing, over-reactive, critical, a perfectionist, and negative with a temper. He claims that he is quiet, and introvertive. In addition he considers that his wife is a good mother and that the marriage was all right but could have been better. One problem was the husband's use of physical force in disciplining the children.
There was an incident in the summer of 1990 when the plaintiff struck the defendant, bruising her face and blackening her right eye. The marriage completely deteriorated on December 4, 1990 after an argument over the plaintiff's refusal to hang wallpaper. A violent argument ensued with yelling and screaming, the throwing of shoes and finally the defendant attacking the plaintiff with scissors. As a result, Mr. Franco was arrested, and removed from the home until February 1991. The plaintiff's claim for divorce was served December 1, 1990.
The plaintiff and the defendant own real estate located at 30 Brownstone Drive, Torrington, purchased for $32,000.00 which now has a value of $160,000.00 to $175,000.00. This property is encumbered by a first mortgage of $17,000.00 and a second mortgage home equity loan of $68,000.00. Part of the equity loan was used to purchase a 1989 Oldsmobile Cutlass which has a value of approximately $10,000.00. There is also a 1984 Subaru owned by the plaintiff with a value of $1,000.00 and a 1980 Mustang valued at $800.00.
Mr. Franco has a 401K plan valued at $6,699.04, an IRA of $16,445.85 and a retirement amount with Anaconda American Brass of $9,464.00. Mrs. Phelps-Franco has a retirement plan through the city valued at $17,000.00. An examination of the respective financial affidavits discloses the usual problem i.e. while living together, the combined income was more than adequate, but maintaining separate households places a strain on each party.
"In determining whether to award alimony, the court `shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, CT Page 1711 estate and needs of each of the parties and [any property] award . . . pursuant to section 46-81 . . . .' General Statutes Sec. 46b-82. In assigning property when dissolving a marriage, the court, in addition to the criteria listed in Sec. 46b-82 must consider the liabilities of the parties and `the opportunity of each for future acquisition of capital assets and income.' General Statutes Section 46b-81 (c).
"The court is not obligated to make express findings on each of these statutory criteria. Dubicki v. Dubicki, 186 Conn. 709, 716, 443 A.2d 1268 (1982); Posada v. Posada, 179 Conn. 568, 573, 427 A.2d 406 (1980). The purpose of alimony is to meet one's continuing duty to support; Wood v. Wood, 165 Conn. 777, 784, 345 A.2d 5
(1974); while the purpose of property division is to unscramble the ownership of property, giving to each spouse what is equitably his. Beede v. Beede, 186 Conn. 191, 195,440 A.2d 283 (1982)." Weiman v. Weiman, 188 Conn. 232
234; Sweet v. Sweet. 190 Conn. 657, 660.
From the evidence and applying the relative legal principles involved, the court finds that the following orders should enter:
1. The marriage of the parties be dissolved on the grounds of irretrievable breakdown.
2. A. Custody of the minor children shall be joint with physical custody in the defendant. The plaintiff shall have reasonable, liberal and flexible visitation, the same to include not less than alternate weekends from Friday at 5:00 p.m. to Sunday at 5:00 p.m.; one evening per week 5:00 p.m. to 7:30 p.m. which may be enlarged to overnight upon agreement of both parties.
B. The parties shall alternate visitation on the following holidays, so that the plaintiff will have visitation on the even numbered holidays in the even numbered years and the defendant shall have visitation on the odd numbered holidays in the even numbered years. The plaintiff shall have visitation on the odd numbered holidays in the odd numbered years and the defendant shall have visitation on even numbered holidays in the odd numbered years.
1. New Year's Day; 2. Independence Day; 3. Thanksgiving; 4. Day After Thanksgiving; 5. Christmas Eve to 10:00 a.m. Christmas Day; 6. Christmas Day from 10:00 a.m. on. CT Page 1712
C. The parties shall alternate visitation on the following three day weekends in accordance with the same procedure as single holidays. If the plaintiff's three day holiday weekend falls on a weekend which is not his regular visitation, the defendant may elect to have visitation the weekend before or the weekend after the three day weekend.
1. Easter Weekend; 2. Memorial Day; 3. Labor Day; 4. Veterans Day
The plaintiff shall have the right to two weeks during the children's summer vacation, which need not be consecutive, upon two weeks notice to the defendant.
3. The plaintiff shall pay to the defendant child support consistent with the child support guidelines. As presently constituted, the guidelines call for support of $330.00 per week while these children reside with the defendant, $290.00 for two children and $195.00 for one child.
4. The parties shall maintain medical insurance coverage for the benefit of the minor children as is available through their places of employment. The plaintiff and defendant shall share equally all reasonable and necessary unreimbursed medical, dental, orthodontia, eye care, prescription, psychiatric and psychological expenses for the minor children. Neither party shall incur any extraordinary medical or elective expenses of the aforesaid kind for such children prior to consultation with the other, and with such other's approval, except in case of emergency. Provided that such approval, when necessary may not be unreasonably withheld. It shall be an order of the court pursuant to Connecticut General Statutes 46b-84 (c) that:
 a. the signature of the custodial parent of the insured dependent shall constitute a valid authorization to the insurer for purposes of processing an insurance reimbursement payment to the provider of the medical services;
 b. neither parent shall prevent or interfere with the timely processing of any insurance reimbursement claim;
 c. the insured parent shall promptly pay to the custodial parent any insurance reimbursement for the services of a medical provider paid by the custodial parent; and
d. the custodial parent is responsible for CT Page 1713 providing the insurer with a certified copy of the order of dissolution. Such insurer may thereafter rely on such order and is not responsible for inquiring as to the legal sufficienty of the order.
5. The plaintiff shall be entitled to claim the minor children Gregory Phelps-Franco and Ryan Phelps-Franco, as tax exemptions for income tax purposes and the defendant shall claim the child, Keegan Phelps-Franco as a tax exemption for income tax purposes.
6. With regard to the 1991 tax year the plaintiff shall be entitled to claim as a deduction the interest payments made on the first and second mortgages in January and February 1991, and the defendant shall be entitled to claim as a deduction the interest payments through December 1991.
7. Each party is to maintain their current life insurance benefit level (plaintiff has a $100,000.00 policy and defendant has a $50,000.00 policy) and establish the children as irrevocable beneficiaries with the other parent as trustee, until the youngest is 18 years of age.
8. The parties jointly own real property located at 30 Brownstone Drive, Torrington, Connecticut. The defendant shall have exclusive occupancy of said residence until the parties' youngest child attains the age of eighteen years; or is sooner emancipated, or if the defendant and children no longer reside in the home as their primary residence; or if the home is sold prior to this date, in any event no later than October 7, 2000. At that time the home will be placed on the market and sold at no less than fair market value to be determined by the average of two appraisals. The net proceeds from the sale of the property are to be divided 60% to the defendant and 40% to the plaintiff after payment of the first mortgage to Torrington Savings Bank; the second mortgage to Bank of Boston; appraisal fees; attorney's fees and all costs of closing. Any tax liabilities which may be incurred at the time of sale shall be split in accordance with the interest to that party as stated above. In view of the fact that the defendant is required to make payment on the mortgages, she shall be entitled at the time of closing to a reimbursement from the plaintiff's share of 50% of all sums she has paid to reduce the principal from the date of the judgment to the date of the sale.
While the defendant occupies said premises she CT Page 1714 shall hold the plaintiff harmless from the first and second mortgages, real estate taxes and homeowners insurance which shall be a full replacement value policy thereon and she shall not encumber the property to any further extent without the written permission of the plaintiff. During her occupancy of the property the defendant shall be responsible for the general maintenance of the property.
The plaintiff and defendant shall share the cost of major repairs to the marital residence in proportion to their equity split as set forth above. Major repairs are defined to be repairs to the structure or systems of the house, e.g., plumbing, heating, etcetera which exceed $300.00 in costs. The defendant agrees to obtain at least two estimates for the repairs and replacements unless the repairs and replacements are in the nature of an emergency, it being understood that the plaintiff's permission to proceed with said repairs or replacements shall not be unreasonably withheld. Both parties hereby agree that future tax consequences regarding the sale of the marital home cannot be predicted at the date of execution of an agreement. Therefore, if a future sale results in federal, state or local tax liability for either party, the liability shall be split in accordance with the interest to that party at the time of the sale.
9. The defendant shall retain any and all rights which she may have to any of the plaintiff's vested or non-vested interests in pension plans including, but not limited to defined benefit plans, defined contribution plans, 401K plans, deferred compensation plans and IRA's.
10. The plaintiff shall retain all right, title and interest in and to the 1984 Subaru GL wagon and the defendant shall retain all right, title and interest in and to the 1989 Oldsmobile Cutlass. Each party shall assume and pay any debt owed thereon and hold the other harmless therefrom. Each party shall be responsible for insuring their respective vehicle. The parties hereby agree that the 1980 Ford Mustang shall be sold and the net proceeds from said sale divided equally between the parties unless otherwise agreed by the parties.
11. The parties shall sell and split equally all stock jointly owned by them (COMSAT, U.S. Transportation Systems, Highline Industries). The ARCO stock, in the plaintiff's name (acquired during his employment at Anaconda) shall be retained by the plaintiff as part of his retirement benefits. CT Page 1715
12. The plaintiff and defendant shall each retain the savings accounts and/or checking accounts currently listed on their financial affidavits. The plaintiff and the defendant shall be solely responsible for the debts each lists on their financial affidavits, and shall hold the other harmless from said debts.
13. The plaintiff shall be entitled to personal property listed on Schedule A, provided, unless otherwise agreed upon, any property not removed within thirty days shall be considered abandoned. All other personal property shall be the property of the defendant.
14. The defendant may have a change of name to Deborah Phelps.
Judgment may enter accordingly.
PICKETT, J.
SCHEDULE A
The plaintiff husband shall have the following items:
 Mens bureau; Pfaltzgraf dish set, all pieces; 1 couch, 1 chair and hassock, 4 resin chairs; men's bureau in family room and the right to make copies of all photos and home movies on video (approximately 14).